**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-0367-WJM

TERESA MAIORANO,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

      Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

      This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Teresa Maiorano ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits.  The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act").  This appeal followed.

      For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

## I.  BACKGROUND

      Plaintiff Teresa L. Maiorano ("Plaintiff") was born on May 8, 1957 and was 51 years old on the alleged disability onset date.  (Admin. Record ("R.") (ECF No. 10) at 27.)  Plaintiff has completed her GED and has past relevant work experience as a

customer service clerk and sales attendant.  (R. at 20, 27.)

Plaintiff filed an application for a period of disability and disability insurance benefits on January 8, 2010, alleging that she had been disabled since February 17, 2009 due to several impairments, including plantar faciitis in both feet, depression, osteoarthritis, ulnar tunnel disorder, and a hypothyroid condition.  (R. at 154, 158.) Plaintiff's application was initially denied on April 23, 2010.  (R. at 10.)

After requesting a hearing, Plaintiff's claims were heard by Administrative Law Judge ("ALJ") William Musseman on March 17, 2011.  (R. at 10.)  Plaintiff and vocational expert Martin Rauer testified at the administrative hearing.  (*Id.*)  Medical evidence and opinions were provided by treating physicians Dr. Jeffrey G. Snyder, M.D., a general practitioner, and Dr. Kerry Berg, D.P.M., a podiatrist; and examining physicians Dr. Michael G. Messner, D.O., an orthopedic specialist; Dr. Kenneth P. Finn, M.D., a pain medicine and musculoskeletal specialist; and Dr. Mark Meyer, M.D., a pain management specialist.  (R. at 14-17.)

On May 9, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 17, 2009. (R. at 12.)  At step two, he found that Plaintiff suffered from bilateral plantar fasciitis, a

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

severe impairment.  (*Id.*)  The ALJ did not find Plaintiff's thyroid disorder, depression, or

any other impairment to be a severe impairment.  (*Id.*)  At step three, the ALJ found that

Plaintiff's plantar fasciitis, while a severe impairment, did not meet any of the

impairments or combination of impairments listed in the social security regulations.  (*Id.*)

The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that she had

the RFC to perform "sedentary" work as defined by the regulations, including very

minimal standing and walking, and no operation of foot or leg controls.  (R. at 13.)

Given this RFC, at step four the ALJ found that Plaintiff could perform her past relevant

work as a bank customer service clerk and an order clerk, because such work would

not require her to perform activities that were restricted by her RFC.  (R. at 20.)

Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act

and therefore was not entitled to benefits.  (*Id.*)

        The Appeals Council denied Plaintiff's request for review on December 9, 2011.

(R. at 6.)  Thus, the ALJ's May 9, 2011 decision is the final administrative action for

purposes of review.

## II.  STANDARD OF REVIEW

        The Court reviews the Commissioner's decision to determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct

legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a

preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Evidence is not

substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

On appeal, Plaintiff raises four issues: (1) the ALJ failed to properly weigh the medical opinions of treating physicians Dr. Snyder and Dr. Berg; (2) the ALJ erred at step two in finding Plaintiff's depression, hypothyroidism, ulnar tunnel syndrome, and osteoarthritis not to be severe impairments; (3) the ALJ improperly disregarded Plaintiff's testimony regarding all her impairments other than her plantar fasciitis; and (4) the ALJ's RFC assessment failed to consider the impact of Plaintiff's depression and osteoarthritis on her functional ability, and in reliance on the erroneous RFC, the ALJ erred in concluding that Plaintiff could return to her past relevant work.  (ECF No. 14 at 1.)  Plaintiff alleges that each of these errors was caused by the ALJ's application of the wrong legal standard, and that each determination was not based on substantial evidence.  (*Id.*)  The Court will address each of Plaintiff's arguments in turn.

**A.     Treating Doctors' Medical Opinions**

Plaintiff contends that the ALJ improperly weighed the opinions of Dr. Snyder and Dr. Berg, both of whom were Plaintiff's treating physicians.  (ECF No. 14 at 17-21.)

The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). However, an ALJ may disregard that opinion if it is contradicted by other medical evidence, or otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. §§ 404.1527, 416.927).

If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight, if any, the opinion deserves, considering the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (internal quotations omitted). The ALJ need not explicitly discuss each

individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007).

Nevertheless, the ALJ must consider every factor in determining the weight to be

assigned to a medical opinion, and "if the ALJ rejects the opinion completely, he must

then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301; *see* 20

C.F.R. § 404.1527(d)(2); Soc. Sec. Ruling (SSR) 96–2p, 1996 WL 374188, at *4.

      1.    <u>Dr. Snyder</u>

      With regard to Dr. Snyder, Plaintiff argues that as her treating doctor, his opinion

merited not only significant weight, but controlling weight, and the ALJ improperly

disregarded it entirely. (*Id.* at 17-20.)

      The ALJ reviewed Dr. Snyder's opinions regarding the pain Plaintiff suffers as a

result of her plantar fasciitis; his diagnoses of hypothyroidism, osteoarthritis, and

depression; and his opinions regarding Plaintiff's work limitations resulting from her

impairments. (R. at 15-19.) The ALJ noted that Dr. Snyder had been treating Plaintiff as

her primary care physician for eight years as of the date of the hearing. (R. at 14.) Dr.

Snyder, a general practitioner, was not a specialist in any of Plaintiff's impairments. (*Id.*)

      Regarding Plaintiff's osteoarthritis, the ALJ found that "no medically determinable

impairment has been established, with signs and findings that would prevent the

claimant's full and unencumbered use of her upper extremities" (R. at 17), and that

although Dr. Snyder's records noted that Plaintiff had osteoarthritis in her hands, "this

diagnosis has not been confirmed by appropriate imaging studies." (R. at 18.)

Therefore, the ALJ gave no weight to Dr. Snyder's opinion regarding Plaintiff's upper

body limitations. (R. at 17.)

Regarding Plaintiff's depression, the ALJ found that despite Dr. Snyder's diagnosis of depression, "Dr. Snyder's opinion of the claimant's mental [RFC] is not supported by objective clinical evaluation findings or standardized psychometric testing . . . [and] the claimant has not been referred to or evaluated by any recognized mental health professional." (R. at 19.) Further, the ALJ noted that "Dr. Snyder's opinion is not consistent with his treatment records . . . [which do] not support the statement that the claimant's depression is worsening." (*Id.*) As a result, the ALJ gave no weight to Dr. Snyder's opinions regarding Plaintiff's depression or mental RFC. (*Id.*)

Regarding Plaintiff's hypothyroidism, the ALJ noted that Plaintiff did not testify to any symptoms or limitations from her hypothyroidism, and Dr. Snyder's patient notes accorded with the lack of limitations. (R. at 18.) This finding was contradicted only by Dr. Snyder's opinion on a "Thyroid Disorder Medical Assessment Form," which included limitations resulting from Plaintiff's other impairments. (*Id.*) Therefore, the ALJ gave no weight to Dr. Snyder's opinion regarding Plaintiff's hypothyroidism. (*Id.*)

Ultimately, the ALJ gave no weight to any of Dr. Snyder's opinions and concluded that that Dr. Snyder's opinions were inconsistent with his previous opinions, and with "the objective medical signs and findings". (R. at 17.)

In order to conclude that the medical opinions of Dr. Snyder, a treating physician, were not entitled to controlling weight, the ALJ was required to find that either his opinion was not well-supported by medically acceptable diagnostic techniques, or that it was inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300. The ALJ indicated that Dr. Snyder's diagnoses of osteoarthritis and depression

were not supported by clinical diagnostic tests, and that his opinions were inconsistent

with each other and with other evidence.  (R. at 17-19.)  Therefore, the Court finds that

the ALJ applied the correct legal standard required to find a treating doctor's medical

opinion not entitled to controlling weight, and that his analysis was supported by

substantial evidence.

However, the ALJ not only found that Dr. Snyder's opinions did not control; he

gave them no weight at all.  (R. at 17-19.)  A finding that a treating doctor's opinion

does not meet the test for controlling weight does "not [mean] that the opinion should

be rejected.  Treating source medical opinions are still entitled to deference and must

be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."

SSR 96–2p (July 2, 1996.)  In addition to considering all six factors in the analysis, the

ALJ must "give specific, legitimate reasons" for choosing to disregard the opinion

entirely.  *Watkins*, 350 F.3d at 1301.

On this record, the Court finds that the ALJ applied the correct legal standard

and considered all six factors, including (1) that Dr. Snyder had treated Plaintiff for eight

years; (2) that Dr. Snyder served as Plaintiff's primary care physician, but had not done

imaging tests of her hands or psychometric tests of her mental health; (3) there were

inconsistencies between Dr. Snyder's opinions and his own treatment records; (4) there

were inconsistencies between the opinions and the record as a whole; (5) Dr. Snyder

was not a specialist in any of the areas upon which he rendered his opinions; and (6)

other factors contradicting Dr. Snyder's opinions, including Plaintiff's own lack of

testimony regarding limitations posed by her hypothyroidism.  (R. at 14-19.)  The ALJ

**8**

explained that because of the inconsistencies and lack of support "by the objective medical signs and findings," Dr. Snyder's opinions were not entitled to controlling weight, and "the same reasons" led him to conclude that they were entitled to no weight at all.  (R. at 17.)

Because "more than a scintilla" of evidence exists to support the ALJ's evaluation of Dr. Snyder's opinions, and that evidence was not overwhelmed by contrary evidence, the Court finds that the ALJ's analysis was supported by substantial evidence in the record.  *See Lax*, 489 F.3d at 1084.  Accordingly, the ALJ's decision to give Dr. Snyder's opinion no weight was not reversible error.

    2.   <u>Dr. Berg</u>

Plaintiff argues that the ALJ improperly relied on Dr. Berg's opinion of November 2009, when evidence existed that Plaintiff's condition degraded after that date.  (*Id.* at 20-21.)

The ALJ found that the opinion of Dr. Berg, a podiatric specialist who had treated Plaintiff for two years as of the date of the hearing, was entitled to "significant weight" because it was "supported by the objective medical signs and findings . . . [and] not inconsistent with the other substantial evidence of record."  (R. at 19.)  These statements indicate that the ALJ considered the factors required by the regulations, including Dr. Berg's specialty, her treating history, and her opinion's consistency with other evidence.  *See* 20 C.F.R. §§ 404.1527, 416.927.  Thus, the Court finds that the ALJ applied the correct legal standard in weighing Dr. Berg's opinion.

Plaintiff claims that in giving significant weight to Dr. Berg's opinion of November 2, 2009, in which Dr. Berg recommended that Plaintiff be restricted from standing or walking for more than two to four hours total, the ALJ ignored her subsequent medical opinions in which she opined that Plaintiff was "unable to perform any standing work duties." (ECF No. 14 at 20-21; R. at 268-69.) The Court finds this argument unpersuasive, as the ALJ ultimately found Plaintiff's RFC to permit "very minimal standing/walking," and did not adopt Dr. Berg's November 2, 2009 opinion whole cloth. (*See* R. at 13.) Further, as there is sufficient evidence in the medical records to support Dr. Berg's opinion, the Court must defer to the ALJ's evaluation of the evidence and may not reweigh it in his place. *See Salazar*, 468 F.3d at 621.

Accordingly, the Court finds that the ALJ appropriately considered Dr. Berg's opinion.

## B.     Severe Impairments

Plaintiff argues that the ALJ erred in finding that only Plaintiff's plantar fasciitis was a severe impairment, and the remainder of her medical problems were not severe impairments. (ECF No. 14 at 10-13.)

The severe impairment standard at step two of the analysis requires evidence that a claimant's medically determinable impairment "significantly limits [her] physical or mental ability to do basic work activities". 20 C.F.R. § 404.1520(c). The purpose of this requirement is for the claimant to "make a threshold showing that h[er] medically determinable impairment or combination of impairments" has a material affect on her job prospects. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Once this

threshold is reached for any of a claimant's impairments by making "the *de minimis* showing of medical severity, the decision maker proceeds to step three." *Id.*

In this case, the ALJ found that Plaintiff's bilateral plantar fasciitis was a medically determinable impairment that was severe for the purposes of step two.  (R. at 12.)  However, while the ALJ discussed Plaintiff's thyroid disorder and depression, finding they were not severe impairments, he did not make any findings regarding either Plaintiff's osteoarthritis or ulnar tunnel syndrome in his discussion of step two.  (*See* R. at 12.)

Because the ALJ found Plaintiff's plantar fasciitis to be a severe impairment, and the analysis then proceeded to Steps Three and Four, any error in failing to evaluate the possible severity of Plaintiff's upper body impairments was harmless.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here [at Step Two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at Step Two and proceeded to the next step of the evaluation sequence").  Further, the ALJ is required to consider the effects of all of Plaintiff's medically determinable impairments, without regard to whether they individually meet the severity standard, when formulating the RFC.  20 C.F.R. § 404.1545(a)(2); *see infra* Part III.D.

Thus, because any error at step two in this case was harmless, the Court need not review the remainder of Plaintiff's arguments regarding severity, as they are moot.[2]

---

[2]  In her step two argument, Plaintiff raises several points regarding whether her other impairments were medically determinable, and their attendant limitations.  (ECF No. 14 at 10-13.)  The Court will discuss those arguments in the context of Plaintiff's RFC, in III.D., below.

**C.     Credibility of Plaintiff's Testimony**

Plaintiff argues that the ALJ improperly weighed the credibility of her testimony in

disregarding her subjective complaints regarding pain in her hands and elbows resulting

from her osteoarthritis.  (ECF No. 14 at 15-17.)

In evaluating a claimant's subjective testimony of disabling pain, the ALJ must

consider the following:

> (1) whether Claimant established a pain-producing impairment by
> objective medical evidence; (2) if so, whether there is a "loose nexus"
> between the proven impairment and the Claimant's subjective allegations
> of pain; and (3) if so, whether, considering all the evidence, both objective
> and subjective, Claimant's pain is in fact disabling.

*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Luna v. Bowen*, 834

F.2d 161, 163-64 (10th Cir. 1987)).

Here, the ALJ found that Plaintiff's osteoarthritis had not been proven by

objective medical evidence.  (R. at 17-18.)  Although medical opinions by Dr. Snyder

and Dr. Meyer include statements that Plaintiff has osteoarthritis of the hands (R. at

365, 367-68), "this diagnosis has not been confirmed by appropriate imaging studies" or

any other clinical test or objective standard.  (R. at 18.)  Due to the sequential nature of

the ALJ's analysis, the ALJ was first required to determine whether the impairment was

proven by objective medical evidence, prior to proceeding to an analysis of whether the

impairment was related by a "loose nexus" to Plaintiff's allegations of disabling pain.

*See Luna*, 834 F.2d at 164.  Plaintiff did establish that she suffered from plantar

fasciitis, a pain-causing impairment, by objective medical evidence (R. at 12); however,

Plaintiff's foot impairment is not reasonably expected to produce upper body pain, and

**12**

therefore cannot satisfy the "loose nexus" requirement.  *See id.* (finding that "an impairment that would be expected to cause pain in the lower extremities would not be reasonably expected to produce disabling pain in the upper body" and therefore would not be sufficient to meet the "loose nexus" standard) (citing *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 21 (1st Cir. 1986)).  Lacking objective medical evidence of an impairment that could be expected to cause upper-body pain, the ALJ was not required to consider Plaintiff's testimony of that pain.  *See id.*  Indeed, the ALJ noted that "if there is no medically determinable physical [impairment,] the symptoms cannot be found to affect the individual's ability to do basic work activities."  (R. at 18.)  As a result, the ALJ found that Plaintiff's "statements regarding 'arthritis pain,' related to her hands, elbows, neck and knees, [were] not credible."  (*Id.*)

The Court agrees that the record lacks objective medical evidence to support a finding that Plaintiff's osteoarthritis is a medically determinable impairment, as defined by the regulations.  *See* 20 C.F.R. § 404.1528.  Therefore, the Court finds that the ALJ used the proper legal standard in evaluating Plaintiff's complaints of disabling upper body pain resulting from her osteoarthritis, and given the lack of objective medical evidence in the record, appropriately did not consider her testimony of that pain in his findings and conclusions.

D.    **RFC Assessment**

Plaintiff contends that the ALJ erred in failing to properly account for Plaintiff's mental and upper body impairments in his RFC assessment, and therefore used an erroneous RFC in determining her ability to return to her past work. (ECF No. 14 at 13-15.)

The RFC is an assessment of a claimant's capabilities in a work setting to determine "the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  An ALJ must make specific RFC findings based on all of the relevant evidence in the case record.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996) (evidence considered in an RFC assessment may include the claimant's medical history, medical signs and laboratory findings, and medical source statements).  The RFC analysis must explain "how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence".  SSR 96–8p.  The ALJ's articulation of a claimant's RFC must include:

> the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id*.  The ALJ's findings regarding the RFC must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

In determining the scope of a claimant's RFC, the ALJ's assessment must "consider all of [a claimant's] medically determinable impairments . . . , including [her] medically determinable impairments that are not severe".  20 C.F.R. § 404.1545.  An impairment is medically determinable if it is "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. § 404.1508.  "Symptoms" are defined as a claimant's own subjective complaints, "signs" as observable "anatomical, physiological, or

psychological abnormalities which . . . must be shown by medically acceptable clinical diagnostic techniques," and "laboratory findings" as "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  20 C.F.R. § 404.1528.

In this case, the ALJ found that Plaintiff had the RFC "to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), that requires very minimal standing/walking required (*sic*), and no operation of foot/leg controls."  (R. at 13.)  Plaintiff challenges the RFC in multiple respects, arguing that it should have included limitations resulting from her upper body and mental impairments, and that it should have included the limitation that Plaintiff must keep her feet elevated "at or above hip level for most of the day." (ECF No. 14 at 13-14.)  Plaintiff also claims that the ALJ ignored her "moderate to severe hand pain . . . which was possibly secondary to a hypothyroid condition."  (*Id.* at 11.)

1.    Upper Body Limitations

The ALJ found that "no medically determinable impairment has been established, with signs and findings that would prevent the claimant's full and unencumbered use of her upper extremities."  (R. at 17.)  Because the only evidence supporting Plaintiff's upper body impairments beyond Plaintiff's own statements of her symptoms was the records and opinions of Dr. Snyder[3] (*see* R. at 329-30, 332, 337, 350), which themselves were based solely on Plaintiff's subjective complaints, there were no medical "signs" or "laboratory findings" that would have permitted a finding that

_____

[3] Plaintiff notes that Dr. Meyer's opinion also stated that Plaintiff had arthritis.  (ECF No. 14 at 11 (citing R. at 365).)  However, Dr. Meyer's opinion was a "Pain Management Evaluation," not a medical procedure to determine Plaintiff's upper body diagnoses.  (R. at 365.)

the impairments were medically determinable.  *See* 20 C.F.R. § 404.1508.  Therefore,

the ALJ's finding that Plaintiff's upper body impairments were not medically

determinable, and that they need not be considered in formulating Plaintiff's RFC, was

not error.

   2. <u>Mental Limitations</u>

   Regarding Plaintiff's depression, the ALJ found that Plaintiff had "not had any

treatment by a qualified mental health professional . . . [and] there [we]re no indications

in the record that the claimant ha[d] any significant functional limitations secondary to

depression."  (R. at 12.)  Noting that Dr. Snyder's treatment records showed

inconsistent reports of depression symptoms, the ALJ concluded that despite Dr.

Snyder's diagnosis of Plaintiff's depression and conclusion that it affected her RFC with

respect to her concentration and memory, his opinion was "not supported by objective

clinical evaluation findings or standardized psychometric testing."  (R. at 18-19.)

Further, the ALJ noted that Dr. Snyder's opinion of Plaintiff's mental RFC was

inconsistent with his own treatment records.  (R. at 19.)

   Plaintiff argues that the ALJ failed to discuss the functional limitations attendant

to her depression, "despite acknowledging it as a medically determinable impairment."

(ECF No. 14 at 11.)  However, the ALJ's findings do not explicitly acknowledge that

Plaintiff's depression constituted a medically determinable impairment.  Further, even if

Plaintiff's depression was medically determinable, without the support of clinical

diagnostic techniques or a formal psychological evaluation, the evidence of functional

limitations was limited.  Dr. Snyder's most detailed report regarding Plaintiff's mental

capacity notes that she exhibits "moderate" or "slight" limitations in several categories, but has no limitations reaching the level of "marked" or "extreme."  (R. at 359-60.)  After appropriately considering Dr. Snyder's opinion regarding Plaintiff's mental RFC and finding that it merited no weight, as discussed in Part III.A.1, above, the ALJ found no evidence of significant functional limitations.  (R. at 19.)  The Court agrees, and finds that the ALJ's evaluation of Plaintiff's mental RFC used the appropriate legal standard and was supported by substantial evidence in the record.

3.   Elevation of the Feet

The ALJ did not make a specific finding explaining why he excluded the limitation that Plaintiff elevate her feet from the RFC.  However, the record reflects that the requirement to elevate Plaintiff's feet was supported only by Dr. Snyder's opinions of Plaintiff's RFC, and the ALJ found that those opinions merited no weight.  (*See* R. at 17.)  Because the ALJ's decision not to include that limitation in the RFC was based upon his weighing of the evidence, and the record includes multiple medical opinions that do not require elevation of the feet, the Court can neither reweigh the evidence, nor find that the ALJ's exclusion of that limitation was not supported by substantial evidence in the record.  *See Salazar*, 468 F.3d at 621.  Therefore, the Court finds that the exclusion of that limitation was not reversible error.

4.   Hypothyroid Limitations

Regarding Plaintiff's hypothyroid condition, the ALJ found that it did constitute a medically determinable impairment, but that "there [wa]s no evidence that this impairment has caused any functional limitations on a continuing basis."  (R. at 12.)

17

The Court agrees.  Plaintiff's citation to Dr. Snyder's "Thyroid Disorder Medical Assessment Form" is unavailing, as that form included limitations resulting from all of Plaintiff's impairments, not solely from her hypothyroid condition.  (*See* R. at 350-53.) Nothing in the record connects Plaintiff's complaints of hand pain to her hypothyroid condition.  Therefore, the Court finds that the ALJ did not err in failing to include any limitations resulting from Plaintiff's hypothyroid condition in the RFC.

5.    Consultative Evaluation

Plaintiff also argues that when the ALJ found insufficient evidence to support work-related limitations resulting from Plaintiff's upper body and mental impairments, he should have ordered a consultative evaluation.  (ECF No. 14 at 12.)  Where there is "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation," the ALJ should order a consultative examination to determine whether a claimant is disabled under the Act.  *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). However, where the claimant is represented, the ALJ can generally rely on the claimant's counsel to identify issues requiring a consultation, and "[i]n the absence of such a request by counsel, [courts] will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.

Here, there is no "objective evidence" that indicates the presence of an impairment whose symptoms and characteristics are not established in the record.  The ALJ's decision to give no weight to Dr. Snyder's opinions, which constituted the

principal evidence of Plaintiff's upper body and mental impairments, is not equivalent to a finding that insufficient evidence existed to make a determination.  (*See* R. at 17-19.)  Further, there is no indication in the record that Plaintiff's counsel identified any area of inquiry requiring a consultative examination before the ALJ.  Therefore, the Court finds that the ALJ did not err in failing to request a consultative examination, and the ALJ's RFC assessment was sufficiently supported by substantial evidence in the record.

6.   <u>Step Four</u>

Finally, Plaintiff challenges the ALJ's step four finding that she could return to past work, arguing that the RFC, and the ALJ's subsequent hypothetical questions posed to the vocational expert, did not include limitations resulting from Plaintiff's mental impairments.  (ECF No. 14 at 14-15.)  Because the Court has found the ALJ did not err in formulating the RFC, and the RFC lacked any mental limitations, there was no error in omitting mental limitations from the ALJ's step four analysis.

Accordingly, the Court finds that the ALJ applied the correct legal standards and his conclusions were supported by substantial evidence in the record.

### III.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

Dated this 13th day of March, 2013.

BY THE COURT:

William J. Martínez
United States District Judge